1

2

3

4

**REESE LLP**
Michael R. Reese (SBN 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

5

6

7

8

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Email: *ggranade@reesellp.com*

9

10

11

12

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*Pro Hac Vice* to be Submitted)
505 Northern Boulevard, Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552
Email: *spencer@spencersheehan.com*

13    *Counsel for Plaintiff and the Proposed Class*

14

15

16

17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

18

19

20

21

22

23

BRAD HEE, individually, and on behalf of those similarly situated,

               Plaintiff,

     v.

H MART, INC.,

               Defendant.

CASE NO. 20-cv-2960

**CLASS ACTION COMPLAINT**

**Demand for Jury Trial**

24

25

26

27

28

Brad Hee ("Plaintiff") by Plaintiff's attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     H Mart, Inc. ("Defendant") manufactures, distributes, markets, labels and sells confections made from mochi (sticky rice) with a purported vanilla ice cream filling, under their Mochi Mochi brand ("Products").[1]

2.     The Products are available to consumers from defendant's retail stores in at least twelve (12) states including California and defendant's website and are sold in boxes containing 6 pieces of 1.5 FL OZ (9 FL OZ).

3.     The "Japanese sticky rice dough" known as Mochi "can be traced as far back as the year 794 A.D."[2]

4.     The dough is "pounded until it becomes a paste" and then molded to the intended shape and baked.[3]

5.     The origins of Mochi Ice Cream however are less exact, with sources citing its creation in Hawaii, California and Japan.

6.     This novelty frozen dessert consists of "a ball of ice cream encased in pillowy soft, rice paste mochi, and dusted with potato or corn starch."[4]

7.     The combination of the cold ice cream and the chewy softness of the mochi contribute to a unique sweetness and texture.

8.     Mochi ice cream is unique for reasons not limited to (1) its availability not only in traditional flavors like vanilla, chocolate and strawberry but in novel flavors like green tea and mango and (2) it is intended to be eaten with one's fingers, making it a convenient snack not requiring a spoon.

---

[1] Wikipedia contributors. "Mochi ice cream." Wikipedia, The Free Encyclopedia. 4 Nov. 2019. Web. 29 Nov. 2019.

[2] Rachel Seis, This Japanese Ice Cream Is Taking Over. Here's What You Need to Know., Taste of Home, Jan. 10, 2019.

[3] Brianna Vasquez, Mochi…The Newest Food Trend, The Buzz, City Tech CUNY, Nov. 17, 2016.

[4] Food & Drink Resources, The Asian Ice Cream Trend Is Everything This Summer.

1

9.    The relevant front label representations include "Mochi Mochi," "Japanese Ice Cream Bonbons," "Mochi Ice Cream," "Vanilla," "Imagine a harmonious combination of creamy gourmet ice cream wrapped in a sweetened rice confection," an image of the vanilla flower and a picture of the Product.



10.    The back label contains the same identity statement and product description as the front label but also contains the Nutrition Facts and ingredient list.



## I.    Ice Cream Products

11.    Ice cream is a year-round treat enjoyed by 96% of Americans.[5]

12.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[6]

---

[5] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

[6] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.

13.     Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[7]

14.     When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[8]

15.     According to ice cream lore, Thomas Jefferson "invented" vanilla ice cream when he learned of vanilla during his ambassadorship to France and managed to obtain a sample.

16.     Upon returning to Monticello, he mixed this bottle with the frozen milk and cream dessert he was fond of consuming while drafting the Declaration of Independence.[9]

17.     President Jefferson is reported to have even imported vanilla so this new frozen dairy treat could be served at his inaugural ball.

**II.     Vanilla is Perennial Favorite Ice Cream Flavor**

18.     Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

19.     The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[10]

20.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[11]

21.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked

---

[7] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").

[8] 21 C.F.R. § 135.110(f)(1).

[9] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013

[10] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018

[11] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018

4

pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[12]

**III.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand**

22.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[13]

23.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[14]

24.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[15]

25.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[16]

26.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

---

[12] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

[13] 21 C.F.R. §169.3(c).

[14] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[15] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[16] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

27.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[17]

28.    The typologies of "food fraud" encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

**IV.    Food Fraud as Applied to Vanilla**

29.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[18]

30.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[19]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor<br><br>• Caramel to darken the color of an imitation vanilla so it |

---

[17] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[18] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[19] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

|  | more closely resembles the hue of real vanilla[20] |
|  | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use<br>• Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[21]<br>• Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[22]<br>• "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |

---

[20] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[21] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[22] Berenstein, 423.

7

➢ Addition of fillers to give the impression there is more of the product than there actually is

• Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County.

• Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list

   o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics

➢ Ingredient List Deception[23]

   o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

   o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food; often containing high amount of vanillin, which must be disclosed as an *artificial* flavor when paired with vanilla

## V.    The Use of Vanillin to Simulate Vanilla

31.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

32.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

33.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to

---

[23] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

a full gallon of single-fold vanilla extract."[24]

34.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

## VI.    Ice Cream Flavor Labeling

35.    Carol McBride, U.S. vanilla category manager for global flavor giant Symrise, noted these requirements and their effect on consumers: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers."[25]

## VII.    Early Ice Cream Flavoring Debate Emphasizes Preventing Consumer Deception

36.    Before formal regulations were enacted, Congressional Hearings from the 1930s offered the legislature the opportunity to state their position on the non-misleading designation of flavors on ice cream products.

37.    Unsurprisingly, the starting point for the debate was how to label vanilla ice cream flavored with added vanillin from clove oil, a natural source material.

38.    Why, the industry, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

39.    In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of ice cream's representative, Mr. Schmidt:

Mr. Kenney:    Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt:    Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:    *We agree that Barnum educated us along that line a long time ago…*

---

[24] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

[25] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled lemon "; and if it is cherry, it ought to be labeled "cherry."

40.     Later in the hearing, Mr. Chapman and another industry representative engaged

over the proper declaration of flavor for ice cream:

Mr. Chapman:     Do you make raspberry?

Mr. Hibben     Yes.

Mr. Chapman     And you put that on the label?

Mr. Hibben     We say "raspberry ice cream."

Mr. Chapman     And if it is peach, you put that on the label?

Mr. Hibben     It Is peach ice cream; yes.

Mr. Chapman      And If you call it vanilla, what do you put on?

Mr. Hibben     We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman     But you say you put in It oil of cloves instead of vanilla

Mr. Hibben     We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman     If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben     No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman     Is it an extract from the vanilla bean?

Mr. Hibben     It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other.

10

Mr. Chapman        I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.[26]

41.     Even before ice cream standards were established, Congress framed the central question for ice cream flavoring as whether the flavor source was entirely derived from the characterizing flavor – i.e., raspberry for raspberry ice cream, vanilla for vanilla ice cream.

**VIII.   Ice Cream Flavoring Regulations**

42.     The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'" FDA, Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979") attached hereto as Exhibit A.

43.     The requirements "recognize[s] three distinct types of ice cream, based on the use of natural and various combinations of natural and various combinations of natural and artificial flavors that characterize this food." Quinn Letter, May 31, 1979; *see* 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

Vanilla Ice Cream Labeling Quick Chart

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |
| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

---

[26] One of the reasons for the emphasis on flavor derived from the characterizing flavor was ice cream's status as a high value, expensive product, made mainly from milk and cream.  The use of ersatz flavoring lowered the quality of an otherwise valued item.

11

44. In ice cream, "natural flavor" refers to flavor derived only from the characterizing flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing flavor.

45. For a category 1 ice cream, which "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Exhibit A, Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

46. The requirements – and resulting consumer expectations for almost fifty years – are clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or flavor derived from vanilla beans. Exhibit "A, Quinn Letter, May 31, 1979; *see also* Exhibit B attached herto, Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans," "the standard for ice cream does not provide for the label designation of "With other [natural] flavors" (WONF).").

**IX. The Products are Misleading Because they Contain No Vanilla**

47. "Vanilla ice cream" is understood by consumers to identify a product where vanilla is the characterizing flavor andcontained in a sufficient amount to characterize flavor the product.

48. These expectations are due to standards of identity for the labeling of vanilla ice cream which have been in place for over fifty (50) years.

49. Due to these experiences, consumers know to look on the front label and have confidence in what it tells them.

50. Nevertheless, defendant's Products do not contain any real vanilla as shown by its ingredient list which states "Artificial Vanilla Flavor."

Ingredient List

INGREDIENTS : Fresh Milk, Fresh Cream, Condensed Milk, Sugar, Corn Syrup, Stabilizer, Containing: Microcrystalline Cellulose, Vegetable Gum, Mono-diglycerides, Polysorbate 80, Carrageenan, Artificial Vanilla Flavor(Water, Propylene Glycol, Ethyl acohol, Caramel Color), Rice Flour, Water, Pasteurized Egg White, Corn Starch / Contains Milk and Egg

INGREDIENTS: Fresh Milk, Fresh Cream, Condensed Milk, Sugar, Corn Syrup, Stabilizer, Containing: Microcrystalline Cellulose, Vegetable Gum, Mono-diglycerides, Polysorbate 80, Carrageenan, Artificial Vanilla Flavor (Water, Propylene Glycol, Ethyl alcohol, Caramel Color), Rice Flour, Water, Pasteurized Egg White, Corn Starch / Contains Milk and Egg

51.     The artificial vanilla flavors in the Products include vanillin and ethyl vanillin, and are made from tree pulp and petroleum byproducts, and lack the over 200 compounds which make vanilla so desired by consumers.

52.     Consumers are accustomed to artificially flavored vanilla ice cream products being prominently labeled as "artificial vanilla" or "artificially flavored vanilla."

**53.**     This requirement is contained in regulations for ice cream products where no flavor comes from the characterizing flavor:

> or if artificial flavor is used alone the name on the principal display panel or panels of the label shall be accompanied by the common name of the characterizing flavor in letters not less than one-half the height of the letters used in the words "ice cream", preceded by "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial Vanilla", or "artifically flavored Strawberry" or "artificially flavored Vanilla and artificially flavored Strawberry".

21 C.F.R. § 135.110(f)(2)(iii).

54.     Defendant's front label fails to disclose that the Products are artificially flavored.

55.     Since consumers have clear expectations for vanilla ice cream and expect it to get its flavor only from vanilla beans, defendant's disclosure on the ingredient list is insufficient to cure any deception because there is no expectation a product labeled as "Vanilla Ice Cream" without any qualifying terms – natural, artificially flavored, etc. – will not have any real vanilla.  *See*

13

*Williams v. Gerber Products Company,* 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.")

## X.   Coloring Misleads Consumers to Expect Products Contain More Vanilla Than They Do

56.   The Products contain caramel coloring as a component of the artificial vanilla flavor, indicated on the ingredient list.

57.   Caramel coloring's usage in vanilla is one of the types of "food fraud" described with respect to this food, since it darkens the color of the synthetic solution used in place of real vanilla.

58.   The added coloring provided to the Products by caramel modifies the color of the vanilla ice cream to a color closer to a vanilla ice cream flavored exclusively by flavor from the vanilla plant.

59.   The darker color makes the consumer (1) less likely to question or be skeptical of the amount and type of vanilla in the Products, (2) expect the Products to be similar to other, accurately labeled vanilla ice creams and (3) expect the Products to at least contain some vanilla, when they do not contain any.

## XI. Injury

60.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

61.   The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the ice cream, which is required and

14

consistent with consumer expectations.

62.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

63.    The Product contains other representations which are misleading and deceptive.

64.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $5.99 per 9 FL OZ, excluding tax – compared to other similar products represented in a non-misleading way.

### Jurisdiction and Venue

65.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) ("CAFA").

66.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

67.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

68.    Plaintiff is a citizen of California.

69.    Defendant H Mart, Inc. is a Delaware corporation with a principal place of business in Lyndhurst, Bergen County, New Jersey.

70.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

71.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

72.    A substantial part of events and omissions giving rise to the claims occurred in this District.

**Parties**

73.     Plaintiff Brad Hee is a resident of San Jose, California.

74.     Defendant is a Delaware corporation with a principal place of business in Lyndhurst, Bergen County, New Jersey.

75.     During the class period, plaintiff purchased the Product for personal use and consumption based on the above representations, for no less than the price indicated, *supra*, excluding tax.  Plaintiff would not have purchased at all, or would have paid less for, the Products if he known that the vanilla presentations was false and misleading.

76.     Plaintiff would consider purchasing the Product again if there were assurances that the Product's representations were no longer misleading.

**CLASS ACTION ALLEGATIONS**

77.     Plaintiff bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class that Plaintiff seek to represent (the "Class" or "the California Class") is composed of and defined as follows:

> All persons residing in California who have purchased the Products for their own use (which includes feeding their friends and families), and not for resale, since May 1, 2016.  Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

78.     For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the named Plaintiff.

79.     This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

80.     Numerosity.  The Class each consist of many thousands of persons throughout the

16

State of California.  The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

81.     Commonality and Predominance.  The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.  They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant contributed to, committed, or is responsible for the conduct alleged herein;

b.      Whether Defendant's conduct constitutes the violations of law alleged herein;

c.      Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

d.      Whether Class Members are entitled to injunctive relief; and

e.      Whether Class Members are entitled to restitution and damages.

82.     By seeing the name, labeling, display and marketing of the Products, and by purchasing the Products, all Class Members were subject to the same wrongful conduct.

83.     Absent Defendant's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Products or paid a premium price for them.

84.     Typicality.  Plaintiff's claims are typical of the claims of the Class, respectively, because Plaintiff purchased the Products and was injured thereby.  The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

85.     Adequacy.  Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with those of other Class Members.  Each Class Member is entitled to

damages reflecting a similar and discrete purchase or purchases that each Class Member made. Plaintiff has retained competent and experienced class action counsel, who intend to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

86.     Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Plaintiff anticipates no difficulty in the management of this action as a class action.

87.     This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading and deceptive representations and omissions regarding The Products.

88.     Notice to the Class.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

89.     Plaintiff  incorporates  by reference all allegations contained in the complaint as if fully set forth herein.

90.     California  Business  &  Professions  Code  section  17200  ("UCL")  prohibits  any "unlawful, unfair or fraudulent business act or practice."

91.     The  acts,  omissions,  misrepresentations,  practices,  and  non-disclosures  of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

a.     21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

b.     21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

c.      21 U.S.C. §343(g), which deems a food misbranded if it purports to be a food which is subject to a standard of identity but does not comply with such standard due to not containing the ingredients required by the standard;

d.     21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients; +

e.     21 C.F.R. § 135.110(f)(2)(i) which prohibits a product from being labeled as "vanilla ice cream" where it contains flavor from sources other than its

19

natural characterizing flavor, which is considered to be an "artificial flavor";

    f.    21 C.F.R. § 135.110(f)(2)(iii) which requires that a product that contains no flavor from the characterizing flavor to be labeled as "artificially flavored vanilla ice cream" on the front label;  and

    g.    21 C.F.R. §135.110(f)(5)(i) which states that if the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent it is an artificial flavor.

92.    Defendant's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

93.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, *et seq.* ("Sherman Law"), including, at least, the following sections:

    a.    Section 110100 (adopting all FDA regulations as state regulations);

    b.    Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

    c.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

    d.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

e.   Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

f.   Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

g.   Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

94.   Each of the challenged statements made and actions taken by Defendant violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

95.   Defendant leveraged its deception to induce Plaintiff  and members of the Class to purchase products that were of lesser value and quality than advertised.

96.   Defendant's deceptive advertising caused Plaintiff  and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Products over other products that are less expensive, and contain virtually the same or immaterially different amounts of vanilla.  Had Plaintiff  and the members of the Class been aware of Defendant's false and misleading advertising tactics, they would not have purchased the Products at all, or would have paid less than what they did for it.

97.   In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

98.   Plaintiff  also seeks an order for the disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200,** *et seq.* **–**
**Unfair and Fraudulent Conduct Prong of the UCL)**

99.     Plaintiff   incorporates   by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

100.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

101.    The false and misleading labeling of the Products, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

102.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to Plaintiff and members of the Class.

103.    Defendant's labeling and marketing of the Products is likely to deceive Class Members about the flavoring source and amount of vanilla of the Products.

104.    Defendant either knew or reasonably should have known that the claims and statements on the labels of the Products were likely to deceive consumers.

105.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

106.    Plaintiff  also seeks an order for the disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

107.    Plaintiff  incorporates by reference all allegations contained in the complaint as if fully set forth herein.

108.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

109.    As alleged herein, Defendant, in its labeling of the Products, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla of the Products.

110.    In reliance on these false and misleading advertising claims, Plaintiff  and members of the Class purchased and used the Products without the knowledge that the Products did not contain only flavor from vanilla and its vanilla taste was provided mainly by non-vanilla, artificial sources.

111.    Defendant knew or should have known that its labeling and marketing was likely to deceive consumers.

112.    As a result, Plaintiff   and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Civil Code §§ 1750, *et seq.* –**
**Consumers Legal Remedies Act)**

**(Injunctive Relief Only)**

113.    Plaintiff   incorporates by reference all allegations contained in the complaint as if fully set forth herein.

114.    The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

115.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

        a.      Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

        b.      Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

        c.      Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

        d.      Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

        e.   Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

116.    As a result, in accordance with Cal. Civ. Code section 1780(a)(2), Plaintiff  and members of the Class have suffered irreparable harm and are entitled to equitable relief in the form of an order:

        a.      Enjoining Defendant from continuing to engage in the deceptive practices described above;

        b.      Requiring Defendant to provide public notice of the true nature of the Products; and

        c.      Enjoining Defendant from such deceptive business practices in the future.

117.    Plaintiff seeks injunctive relief only at this point, but will amend the complaint to seek damages and other monetary relief after sending a CLRA pre-suit demand to Defendant, if Defendant does not comply with the demand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Plaintiff and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.    An order certifying that the action may be maintained as a class action and requiring Defendant to bear the cost of class notice;

B.    An order enjoining Defendant from pursuing the policies, acts and practices complained of herein;

C.    An order compelling Defendant to destroy all misleading and deceptive advertising materials and packaging;

D.    An order requiring Defendant to pay restitution to Plaintiff and all members of the Class;

E.    An order requiring Defendant to pay actual damages to Plaintiff and all members of the Class;

F.    Punitive damages;

G.    Pre-judgment interest from the date of filing suit;

H.    Costs, expenses, and reasonable attorneys' fees; and

I.    Such other and further relief as the Court may deem necessary or appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated:  April 30, 2020

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese (SBN 206773)
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone:  (212) 643-0500
Email:  *mreese@reesellp.com*

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone:  (310) 393-0070
Email:  *ggranade@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (*Pro hac vice* to be submitted)
505 Northern Blvd Ste 311
Great Neck New York 11021-5101
Telephone: (516) 303-0552
Email: *spencer@spencersheehan.com*

*Counsel for Plaintiff and the Proposed Class*

1

2 **AFFIDAVIT OF MICHAEL R. REESE**

3 **PURSUANT TO CALIFORNIA CIVIL CODE § 1780**

4     Michael R. Reese declares:

5     1.    I am an attorney duly admitted to practice before this Court.  I am a partner in the

6 law firm of Reese LLP, attorneys of record for Plaintiff Brad Hee.

7     2.    I am one of the attorneys principally responsible for the handling of this matter.  I

8 am personally familiar with the facts set forth in this declaration, and if called as a witness, I

9 could and would competently testify to the matters stated herein.

10     3.    This action has been commenced in a county described in California Civil Code

11 section 1780 as a proper place for the trial of the action.  The transactions or a substantial portion

12 thereof occurred in Santa Clara County, California.

13     I declare under penalty of perjury under the laws of the United States of America that the

14 foregoing is true and correct.

15     Executed on April 30, 2020, at New York, New York

16

17                 */s/ Michael R. Reese*
                Michael R. Reese

18

19

20

21

22

23

24

25

26

27

28